UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANNA MARIE MIDDLETON,

    Plaintiff,

v.                                                Case No: 6:17-cv-85-Orl-40TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits under the Act.[1] Upon a review of the record, I respectfully recommend that the Commissioner's final decision in this case be **AFFIRMED**.

### Background[2]

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on March 14, 2013, alleging that she became disabled on April 13, 2008 (Tr. 205-213). She last met the insured status requirements of the Act on December 31, 2013 (Tr. 227). Plaintiff was forty-nine years old on her date last insured (Tr. 207), with a tenth grade education and past work experience as a waitress and bartender (Tr. 41, 58). She alleged disability due to joint-osteoporosis, neck and back pain, sciatic nerve

---

[1] Plaintiff's application for Supplemental Security Income was denied due to Plaintiff's resources and is not at issue in this appeal (Doc. 23, fn. 1).

[2] The information in this section is taken from the Joint Memorandum (Doc. 23).

pain, "unable to walk or stand no more than 20 30 minutes," depression, anxiety, panic attacks, and "unable to sleep more than 4 hours." (Tr. 230).

Plaintiff's applications were denied initially and on reconsideration (Tr. 119-124, 138-143), and she requested and received a hearing before an administrative law judge ("ALJ") (Tr. 37-61, 151-153). On November 27, 2015, the ALJ found Plaintiff not disabled and issued her unfavorable decision (Tr. 17-36). On November 23, 2016, the Appeals Council denied her request for review (Tr. 1-6, 14), making the November 27, 2015 opinion of the ALJ the final decision of the Commissioner.

Plaintiff brings this action after exhausting her available administrative remedies. This dispute has been fully briefed, and was referred to me for a report and recommendation.

## The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process which appears in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and at step five, the burden shifts to the Commissioner to prove that other jobs exist in the national economy that the claimant can perform. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date through her date last insured (Tr. 22). At step two, the ALJ determined that Plaintiff suffered from the severe impairments of disorder of the spine and headaches (20 C.F.R. § 404.1520(c)) (Id.). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 24). Next, the ALJ decided that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except with no more than simple routine repetitive tasks (Tr. 24). At step four, the ALJ determined that, through her date last insured, Plaintiff was unable to perform any past relevant work (Tr. 28), but, with the assistance of vocational expert testimony, the ALJ determined at step five that through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (Tr. 29). As a result, the ALJ concluded that Plaintiff was not under a disability from her alleged onset date through her date last insured (Tr. 30).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011)

(citation omitted). When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" <u>Id.</u> "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." <u>Foote v. Chater,</u> 67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*); accord <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

Plaintiff contends that the Commissioner failed to apply the correct legal standards to the opinion of her treating physician. She also objects to the ALJ's reliance on the testimony of the testifying vocational expert.

<u>Evaluation of Medical Opinion Evidence</u>

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. <u>Winschel</u>, 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the

- 4 -

evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c). All opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. See 20 C.F.R. §§ 404.1527, 416.927, and Winschel.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician *unless there is good cause to do otherwise*. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. Lewis, 125 F.3d at 1440. Regardless of whether controlling weight is appropriate, "the Commissioner 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight." Hill v. Barnhart, 440 F. Supp. 2d 1269, 1273 (N.D. Ala. 2006) (citation omitted); see also Sullivan v. Comm'r. Soc. Sec., No. 6:12-cv-996-Orl-22, 2013 WL 4774526, at *7 (M.D. Fla. Sept. 4, 2013); Bumgardner v. Comm'r Soc. Sec., No. 6:12-cv-18-Orl-31, 2013 WL 610343, at *10 (M.D. Fla. Jan. 30, 2013); Bliven v. Comm'r Soc. Sec., No. 6:13-cv-1150-Orl-18, 2014 WL 4674201, at *3 (M.D. Fla. Sept. 18, 2014); Graves v. Comm'r Soc. Sec., No. 6:13-cv-522-Orl-22, 2014 WL 2968252, at *3 (M.D. Fla. June 30, 2014).

Plaintiff contends that the ALJ did not properly weigh the opinions of her treating primary care physician, Cesar N. Abiera, Jr., M.D., with Daramed, LLC. As summarized by the ALJ:

> [F]rom March 2012 through the end of 2013, the claimant

attended monthly follow-up appointments with her primary care physician with Daramed, LLC. The claimant regularly reports experiencing neck and back pain symptoms. Objective evidence from this facility is limited, although the record routinely notes that the claimant exhibited reduced neck and back range of motion, with tenderness and muscle spasms, but she is essentially normal otherwise (i.e. extremities are normal, no neurological deficits, negative straight leg raises, etc.). Given her symptoms, the claimant was given medication including Xanax, Soma, and Lortab (Exhibits 2F, 6F, 7F and 9F). I take note that the claimant's symptoms must have been somewhat well controlled or they were not significantly limiting, as she does not appear to have been referred to a specialist and given the fact that she received only very conservative care.

Additionally, in November 2012, the claimant underwent objective imaging taken of her spine. Images of her cervical spine found only a slight decrease in her cervical intervertebral disc spacing. Images taken of her thoracic spine found only a slight increase in her thoracic curvature, decrease in vertebral body height at TS, mid superior vertebral endplate of TS, and anterior exostoses noted between T6-7 and T7-8. Images taken of her lumbar spine showed a slight decrease in the lumbar curvature, slight decrease in the posterior vertebral body height of 15, a decrease in the posterior vertebral body height noted at 13 with mid superior vertebral end plate, a decrease in posterior intervertebral disc spacing between 15-SI with a decrease in foramen size, and a small calcific density noted just right and anterior to the L3 vertebral body (Exhibit IF). ...

In April 2013, the claimant's treating physician, Cesar Abiera, M.D., completed multiple medical source statements. Dr. Abiera affirmed that the claimant did not suffer from a mental impairment that significantly interferes with her daily functioning, although she does take Xanax for anxiety. Further, Dr. Abiera avowed that the claimant was unremarkable (i.e. normal gait and station, she ambulates unassisted, full grip strength, intact fine dexterity, and normal neurological findings) during her prior appointment on April 19, 2013. (Exhibits 3F and 4F).

In addition, in May 2013, Dr. Abiera completed a residual functional capacity questionnaire and reported that the claimant experiences chronic neck and back pain. Dr. Abiera opined that the claimant could: sit and stand each for 45 minutes at one time; sit for less than two hours in an eight-

> hour day; standing /walking for less than two hours in an eight-hour day; rarely lift up to 10lb.; rarely twist; never stoop, crouch, squat, or climb ladders; and occasionally climb stairs (Exhibit 5F).
>
> I have considered the assessments offered by the claimant's treating physician, Dr. Abiera. A treating physician's opinion is given controlling weight only if it is well supported and not inconsistent with other substantial evidence. Although I do not find that the claimant is capable of unrestricted work at all exertional levels, **the record as a whole does not substantiate the restrictive assessment by the claimant's treating primary care provider finding that the claimant was severely restricted and indicating the she was unable to work. I note that the doctor never referred the claimant to a specialist for care, he rendered only very conservative care, he completed records indicating normal findings in April 2013 (Exhibits 3F and 4F), and the claimant even affirmed being able to lift up to 25lb. in April 2013 (Exhibit 6E). Given these vast inconsistencies, I accord Dr. Abiera's opinion no significant weight.**

(Tr. 25-26) (emphasis added). Plaintiff asserts that the ALJ's reasons for rejecting Dr. Abiera's opinion are not based on the correct legal standards or supported by substantial evidence.

The ALJ reviewed the treatment records and set forth several reasons for concluding that the record does not support Dr. Abiera's restrictive opinion. Inconsistency with the medical evidence is a legitimate basis to discount the opinion of a treating physician.[3] Consequently, the ALJ adequately complied with the legal standard, so long as the ALJ's reasons are supported by substantial evidence. Turning to those reasons, Plaintiff takes issue with the ALJ's conclusion that Dr. Abiera never referred Plaintiff to a specialist, arguing that it is "unclear" from the treatment notes whether Dr. Abiera ever referred her and the ALJ "failed to ask" (Doc. 23 at 15). Plaintiff contends that a portion of

---

[3] See Lewis, 125 F.3d at 1440.

- 7 -

the treatment notes are illegible, but there is "something related to MRIs as early as October 2012 and May 2013 (Tr. 388, 408)." Id.

However, there is no evidence that Dr. Abiera referred Plaintiff to a specialist. His treatment notes contain a section for indicating whether a referral was made (Tr. 380-95, 407-12, 420-35, 437-45), but that section is blank. As part of her application, Plaintiff was asked to provide details of her medical treatment and she did not indicate that she saw a specialist or underwent surgery or other non-conservative treatment (Tr. 233-34, 239, 256-57, 263-64, 276-77, 282-87, and 305-06). As for any purported handwritten reference to MRIs contained in the cited notes (Tr. 388, 408), those notes do not identify any referral[4] and there are no MRIs dated October 2012 or May 2013 in this record.[5] Thus, the ALJ's conclusion that Plaintiff was not referred to a specialist and underwent only conservative care is adequately supported.

Plaintiff also contends that the ALJ mischaracterized the evidence in concluding that Dr. Abiera "completed records indicating normal findings in April 2013 (Exhibits 3F and 4F)" (Tr. 26). I disagree. Exhibit 3F is a Supplemental Mental Impairment Questionnaire in which Dr. Abiera was asked: "Do you feel that this patient suffers from a mental impairment that significantly interferes with daily functioning?" He checked "No." (Tr. 396). In Exhibit 4F, Dr. Abiera described Plaintiff's gait and station as "normal;" opined that she did not need an assistive device for ambulation; her grip strength was "5/5" and Plaintiff "does not have any problems with fine dexterity." (Tr. 399). Dr. Abiera

---

[4] Under "Plan," Dr. Abiera did not enter any information in the typewritten portion of the note that reads: "5. Refer to _____."

[5] As noted by the ALJ (Tr. 25-6), there is an unremarkable MRI dated July 2005 (Tr. 380-381) and x-rays were taken in November 2012 (Tr. 377). There are also post-date last insured MRIs of Plaintiff's brain and lumbar/thoracic spine taken in October 2014 (Tr. 413-419).

also reported no indication of mental impairment, and "sensory, motor, or reflex loss" was described as "normal." (Id.). The ALJ correctly described these records as containing normal findings. The ALJ also correctly noted that Plaintiff "affirmed being able to lift up to 25lb. in April 2013 (Exhibit 6E)" (Tr. 26, 246).[6] These records are substantial evidence to support the ALJ's finding that Dr. Abiera's more restrictive opinions are inconsistent with the record.

Plaintiff also claims the ALJ erred in according great weight to the opinion of a non-examining physician, Dr. Arthur Brovender. According to the administrative decision:

> Most recently, medical expert Arthur Brovender, M.D., an orthopedic surgeon, completed medical interrogatories following a thorough review of the entire record. Dr. Brovender noted that the objective evidence failed to meet or equal the criteria of listing 1.04. Functionally, Dr. Brovender opined that the claimant was capable of: lifting and carrying up to 50lb. occasionally, 20lb. frequently, and 10lb. continuously; sitting, standing and walking each for two hours at one time; sitting up to eight hours in an eight-hour day; standing and walking each for six hours in an eight-hour day; frequently reaching, handling, fingering, feeling, and pushing/pulling; frequently operating foot controls; frequently balancing and climbing stairs and ramps; occasionally crouching, kneeling, stooping, and climbing ladders or scaffolds; and no crawling. (Exhibit 11F).
>
> I have taken into consideration the assessment and opinion of Dr. Brovender in accordance with the Regulations. I note that Dr. Brovender's opinion was both consistent with records and reports obtained from the claimant's treating physicians, noting only limited objective abnormalities (Exhibits 2F, 6F, 7F and 9F), and with the evidence as a whole, including objective imaging showing no severe degeneration or significant abnormalities (Exhibits lF and 2F). In addition, Dr. Brovender is a specialist and pursuant to the Regulations, we generally give more weight to the opinion of a specialist about medical

---

[6] Plaintiff's contention that this admission "does not equate to a finding that she would be able to repetitively lift and carry that amount in a competitive work environment" is without merit. The ALJ did not determine that Plaintiff was capable of frequent lifting of 25 pounds, but assessed her residual functional capacity at the light work level (Tr. 24). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

- 9 -

> issues related to their area of specialty than to the opinion of a source who is not a specialist. Further, it is also noted that Dr. Brovender is a non-examining source, however he is a medical expert for the Social Security Administration and therefore possesses an extensive understanding of the disability programs and their evidentiary requirements, as well as he had the benefit of reviewing the entire record. Therefore, I accord great weight to the opinion of Dr. Brovender as an expert source and notes that it was only out of an abundance of caution, resolving all doubt in the claimant's favor, that I further limited the claimant to the light exertional level.

(Tr. 27). Plaintiff argues that this was error in that Dr. Brovender graduated from medical school in 1958; failed to cite to any evidence in support of his opinion; and the opinion of a non-examining reviewing physician "is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision." Swindle v. Sullivan, 914 F.2d 222, 226 n. 3 (11th Cir. 1990). Taking these arguments in order, I am unaware of any prohibition against 1958 medical school graduates opining before the agency. Dr. Brovender made specific citations to record evidence in support of his opinion (see Tr. 446), and his opinion was not "taken alone." The administrative decision is detailed and comprehensive and confirms that the ALJ considered not only the medical opinions, but "the medical record, the course of conservative treatment, the frequency and duration of care, the lack of treatment during the applicable period, and the claimant's owned [sic] acknowledged abilities" in establishing Plaintiff's capacity to perform work within her assessed residual functional capacity (Tr. 28). The evaluation of the medical opinions is consistent with proper legal standards and the conclusions are supported by substantial evidence.

Vocational Expert testimony

At step five of the sequential evaluation process, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given

the claimant's impairments, the claimant can perform." Jones v. Apfel, 190 F.3d 1224, 1229-1230 (11th Cir. 1999). The jobs must exist in significant numbers in the national economy. 20 C.F.R. § 404.1566(a). The ALJ is required to "articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989)).

Regulations provide that the ALJ may take administrative notice of reliable job information available from various governmental and other publications, including the Dictionary of Occupational Titles ("DOT"). 20 C.F.R. § 404.1566(d). The ALJ may also rely on the testimony of a vocational expert. "When, as here, 'the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills[,] … the Commissioner's preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a VE.'" Curcio v. Comm'r of Soc. Sec., 386 F. App'x 924, 925 (11th Cir. 2010) (quoting Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). "The Commissioner 'may rely solely on the VE's testimony' in making this decision." Pena v. Comm'r of Soc. Sec., 489 F. App'x 401, 402 (11th Cir. 2012) (quoting Jones, 190 F.3d at 1230).

When "the ALJ elects to use a vocational testimony to introduce independent evidence of the existence of work that a claimant could perform, the ALJ must pose a hypothetical question that encompasses all of the claimant's severe impairments in order for the VE's testimony to constitute substantial evidence." Chavanu v. Astrue, No. 3:11-cv-388-J-TEM, 2012 WL 4336205, at *9 (M.D. Fla. Sept. 21, 2012) (citing Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985). That said, an ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."

Crawford, 363 F.3d at 1161. Plaintiff does not argue that the ALJ's hypothetical questions did not comprise all of her severe impairments as found by the ALJ.

The ALJ determined that Plaintiff had the residual functional capacity to perform light work except no more than simple, routine, repetitive tasks (Tr. 24). A vocational expert testified at the administrative hearing, without objection to her qualifications (Tr. 57-61). In response to the ALJ's first hypothetical question, the expert testified that such an individual could work as a cashier II (DOT 211.462-010) for which there were 806,596 jobs in the national economy; a marker II (DOT 920.687-126) for which there were 24,437 jobs in the national economy; and a sub assembler (DOT 729.684-054) for which there were 9,312 jobs in the national economy (Tr. 58). In response to the ALJ's second hypothetical question, the vocational expert testified that such an individual could work as an addresser (DOT 209.587-010); a document preparer (DOT 249.587-018) for which there were 14,461 jobs in the national economy; and as a stuffer (DOT 731.685-014) for which there were 3,735 positions in the national economy (Tr. 58-59). Following this testimony, the vocational expert was asked: "How did you determine the number of jobs?" She responded: "I used a computer program. It's called Job Browser Pro, and it obtains information from the Bureau of Labor Statistics, and then reports it at an estimated number as they occur at the DOT level." (Tr. 59).

No evidence was presented to the ALJ to establish that the numbers generated by Job Browser Pro, and then testified to by the vocational expert, are reliable. It appears that "the vocational expert merely regurgitated numbers that were given to her by a computer program" and "failed to provide any other evidence related to the numbers of jobs available in the national economy." (Doc. 23 at 32). Citing the unpublished decision

of Morales Vargas v. Comm'r of Soc. Sec., Case No. 6:14-cv-01806-KRS (M.D. Fla. Jan. 27, 2016), Plaintiff argues that such testimony has been found unreliable in this district.

The reliance by vocational experts on computer software such as Job Browser Pro has resulted in a number of decisions in various district courts. Some of these decisions find that "exclusive reliance on the raw number of jobs produced by a software program, including Job Browser Pro software, is insufficient to provide substantial evidence at step five of the sequential evaluation unless the VE also provides evidence of the number of jobs available in the national economy based on her own knowledge and experience." Vargas, Doc. 20 at 17 (collecting cases); see also Thompson v. Comm'r of Soc. Sec., No. 2:15-CV-53-FTM-CM, 2016 WL 1008444, at *6 (M.D. Fla. Mar. 15, 2016) ("the VE's exclusive reliance on the software program without any testimony or evidence that she could endorse those numbers based on her knowledge and expertise rendered her testimony unreliable"). Other cases have affirmed administrative decisions where a vocational expert relied on this software. See, e.g., Murphy v. Colvin, No. 5:15CV97/EMT, 2016 WL 5791412, at *8 (N.D. Fla. Sept. 30, 2016) (citing Bryant to reject a challenge that the software tool is not recognized as a reliable source, noting that the ALJ was "entitled to rely upon the VE without further delving into the details of her extrapolations and findings"); Cole v. Astrue, No. CIV. 10-510-CL, 2011 WL 5358557, at *26 (D. Or. June 7, 2011), report and recommendation adopted, No. CIV. 10-510-CL, 2011 WL 5358550 (D. Or. Nov. 4, 2011) (reliance on VE testimony based on Skill Trend by Job Browser held proper). See also Malone v. Astrue, No. 3:10-CV-01137, 2011 WL 5879436, at *5 (M.D. Tenn. Nov. 23, 2011), report and recommendation adopted, No. 3:10-CV-01137, 2012 WL 1078932 (M.D. Tenn. Mar. 30, 2012) (reversing on other grounds but finding "no reason to discredit" vocational expert's testimony where the expert testified as to the

methodology of the software, "which is based on census numbers, DOT codes, and numbers from the OES, which are all government sources and constitute 'reliable job information available from various governmental and other publications.'"). As none of these decisions is binding, I review the particular facts presented here and, although I am concerned about the vocational expert's reliance on Job Browser Pro, in this case, I find no basis to recommend reversal and remand.

First, Plaintiff never challenged the vocational expert's qualifications at the administrative hearing or, for that matter, in this Court. Second, Plaintiff failed to object when the expert offered her opinions, and Plaintiff did not move to strike the opinions after learning that the expert was relying on Job Browser Pro. Third, Plaintiff failed to offer any evidence to controvert the vocational expert's testimony. Fourth, Plaintiff did not ask to see the report generated by Job Browser Pro. Fifth, the expert testified that her testimony would be consistent with the DOT, and she would advise if there was a conflict between the DOT and her opinion, and provide the basis of her opinion (Tr. 57). No such conflict was identified and the ALJ determined that the expert's testimony was consistent with the information contained in the DOT (Tr. 30). No contrary evidence or argument is presented.

It is also significant that the vocational expert's testimony indicates that she did not rely solely on software, but also relied on her own experience and expertise, as shown in the following exchange between Plaintiff's counsel and the expert:

> Q. And the jobs that you delineated for the administrative law judge, if I add in a sit/stand option would that affect your answers?
>
> A. The jobs that I used do allow for a sit/stand option.
>
> Q. Is that in the directory or is that based on your own

> expertise?
>
> A. Yeah, the Dictionary of Occupational Titles does not address the sit/stand option. *That's just based on my experience.*
>
> Q. And *based on your experience and expertise* does that diminish the number of jobs that are available?
>
> A. Yes, it can result in a reduction.
>
> Q. It does result in a reduction, you said?
>
> A. Yes.
> Q. Can you put, quantify that into a percentage?
>
> A. There is nothing I can point to to tell you how I came up with that other than a just an estimation of 50 percent.
>
> ATTY: Thank you. I have no further questions, your honor.

(Tr. 60-61 – emphasis added).

Next, the Commissioner correctly notes the deference given in this circuit to the testimony of a vocational expert. As recently summarized by Magistrate Judge Mirando:

> The Social Security regulations clearly permit the Commissioner to rely on the testimony of a VE for her knowledge or expertise. See 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e), 416.960(b)(2), 416.966(e). Moreover, a VE may rely on her knowledge and expertise without producing detailed reports or statistics in support of her testimony. Curcio v. Comm'r of Soc. Sec., 386 F. App'x 924, 926 (11th Cir. 2010); Bryant v. Comm'r of Soc. Sec., 451 F. App'x 838, 839 (11th Cir. 2012); see also Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.").

Boccelli v. Acting Comm'r of Soc. Sec., No. 2:15-CV-800-FTM-CM, 2017 WL 1174230, at *4 (M.D. Fla. Mar. 30, 2017).

Lastly, the vocational expert testified that one of the representative occupations Plaintiff could perform was the job of cashier—with over 800,000 positions

- 15 -

available in the national economy.[7] Other than attacking the expert's reliance on software, Plaintiff does not contend that this testimony is inaccurate. Even taking into account the 50% reduction testified to by the expert for a sit/stand option - a restriction that was not included in Plaintiff's residual functional capacity assessment—the record shows a wealth of applicable jobs available in the national economy.[8] The expert also testified that the jobs she identified were not exhaustive, but representative (Tr. 59).

On this record, I find that the ALJ was entitled to rely upon the vocational expert's expertise. Curcio, 386 F. App'x at 926. Under these circumstances, remand for more explicit vocational expert testimony is unnecessary because any error is harmless.

## Recommendation

Upon consideration of the foregoing, I respectfully recommend that the Commissioner's final decision in this case be **AFFIRMED** and that the Clerk be directed to enter judgment accordingly and **CLOSE** the file.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

---

[7] An argument can be made that no expert testimony should be required concerning the number of cashier positions in our society. The large number is rationally perceivable by anyone who shops in brick and mortar shops.

[8] The Eleventh Circuit has found 840 jobs in the national economy to be a significant number supporting an ALJ's step five determination. See Brooks v. Barnhart, 133 F. App'x 669, 671 (11th Cir. 2005) (per curiam) (unpublished).

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on February 27, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record